UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| **MICHAEL LYNN PRATT** | * | **CIVIL ACTION NO. 10-0759** |
| **VERSUS** | * | **JUDGE S. MAURICE HICKS** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Michael Pratt protectively filed the instant application for Title XVI Supplemental Security Income payments on November 27, 2007. (Tr. 79-81, 89).[1] He alleged disability as of January 10, 2001, because of gout and high blood pressure. (Tr. 89, 92). The claim was denied at the initial stage of the administrative process. (Tr. 40-41, 45-48). Thereafter, Pratt requested and received a September 25, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr.

---

[1] Pratt filed a prior application for Supplemental Security Income payments in June 2005. *See* Comm.'r's Response in *Pratt v. Astrue*, Civil Action No. 07-2042 (W.D. La.). An Administrative Law Judge denied the claim on January 4, 2007. (Tr. 10). In November 2007, plaintiff sought judicial review of the Commissioner's unfavorable decision. *Id*. The court, however, affirmed the Commissioner's decision, and dismissed the complaint. (Jan. 29, 2009, Ruling & Judgment in C. A. No. 07-2042).

17-36). However, in a May 18, 2009, written decision, the ALJ determined that Pratt was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 7-16). Pratt appealed the adverse decision to the Appeals Council. On March 5, 2010, however, the Appeals Council denied Pratt's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On May 7, 2010, Pratt sought review before this court. He alleges the following errors,

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(2) the ALJ did not comply with the Commissioner's procedure(s) before denying benefits on the basis that plaintiff failed to follow prescribed treatment.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's

determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in

>> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

I. **Steps One, Two, and Three**

The ALJ determined at Step One of the sequential evaluation process that Pratt had not engaged in substantial gainful activity during the relevant period. (Tr. 12). At Step Two, he found that Pratt suffers severe impairments of gout and degenerative joint disease. *Id.* He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 12-13).

## II.     Residual Functional Capacity

The ALJ next determined that Pratt retains the residual functional capacity to perform the full range of light work. (Tr. 13).[2] In so deciding, the ALJ assigned great weight to the opinion of the consultative physician, Scott Cantwell, M.D. (Tr. 14). The ALJ further noted that Cantwell's opinion was not inconsistent with a December 2006 Functional Capacity Evaluation conducted by physical therapist, Steve Allison. *Id*.

The record reflects that on March 1, 2008, Pratt underwent a consultative physical examination administered by Scott Cantwell, M.D., at the request of Disability Determination Services. (Tr. 128-131). Pratt reported difficulties with gout for the past 15 years, but that the condition had worsened. *Id*. He stated that he could not lift anything because of the pain. *Id*. Upon examination, Pratt demonstrated no muscle asymmetry, atrophy, or involuntary movements. *Id*. There was no structural deformity or erythema of any joint except for his right elbow, which was swollen and hot. *Id*. Strength was 4/5 in the right lower extremity because of pain. *Id*. However, he presented with a normal gait, and was able to bend and squat, without difficulty. *Id*. He had 5/5 grip strength, with adequate fine motor movements, dexterity, and

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

ability to grasp objects bilaterally. *Id*. X-rays indicated mild to moderate degenerative changes of both knees. *Id*. Cantwell diagnosed gout, hypertension, tachycardia, obesity, and degenerative changes of the knees. *Id*. He opined that Pratt had some physical findings to support his claim, including decreased range of motion, decreased muscle strength, and significant pain with movement in the right upper extremity. *Id*. Moreover, because he appeared to be having a flare-up of gout during the exam, Cantwell stated that he was unable to assess his abilities when he was not experiencing a gouty exacerbation. *Id*. Nonetheless, Cantwell opined that Pratt likely could sit, walk, and/or stand for a full work day and lift/carry objects up to 20 pounds when not having an "acute" gouty exacerbation. *Id*.

The court emphasizes that Cantwell stated that because Pratt was experiencing a flare-up of gout at the time of examination, he could not assess him during a period of remission, and therefore, his opinion necessarily addressed Pratt's limitations during an exacerbation of symptoms. Moreover, Cantwell qualified his finding that Pratt could lift up to 20 pounds, to times when he was not experiencing an "acute" gouty exacerbation. (Tr. 130).

At the hearing, plaintiff indicated that in one month, he typically experienced about 20 bad days of gout, with eight of them being "real bad." (Tr. 29). On one of these "real bad" days, he cannot do anything and is confined to bed. *Id*. Plaintiff contends that the ALJ erred because his residual functional capacity assessment failed to contemplate the frequency of Pratt's "acute" exacerbations.

The undersigned observes, however, that the ALJ did address plaintiff's allegations regarding the frequency of his exacerbations, but found them not fully credible. (Tr. 14). When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p.

The ALJ also must consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). However, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, the ALJ is entitled to find that the medical evidence is more persuasive than the claimant's own testimony. *Falco, supra*.

In this case, the ALJ declined to credit plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms to the extent that they were inconsistent with the residual functional capacity assessment. (Tr. 14). In concluding that plaintiff's exacerbations were not so frequent as to interfere with the residual functional capacity assessment, the ALJ stressed that plaintiff rarely sought treatment for gout, there were no signs of a gout flare on the three occasions that he did seek treatment, and laboratory values indicated infrequent exacerbations. *Id.*[3] The ALJ's analysis satisfied the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion);

---

[3] In his brief, plaintiff notes that about 30 percent of patients have a normal serum rate at the time of an acute attack. (Pl. Brief, pg. 5) (citation omitted). On the other hand, this suggests that 70 percent of patients have an abnormal serum rate during an acute attack.

*see also* discussion, *supra* (discussing inconsistencies in plaintiff's own testimony).[4]

Plaintiff contends that by noting the infrequency of his treatment records, the ALJ effectively determined that he was non-compliant with his prescribed treatment, without affording him the requisite opportunity to explain his non-compliance. *See Alexander v. Astrue*, 2008 WL 918527 (W.D. La. Mar. 31, 2008). The ALJ, however, did not document any prescribed treatment that otherwise would have rendered plaintiff not disabled had he adhered to the prescribed regimen. *See* 20 C.F.R. § 416.930 and SSR 82-59. Rather, the ALJ reasoned that if the acute exacerbations were as severe and frequent as alleged, then plaintiff would have been compelled to consult medical sources in search of relief considerably more often than he did. *See* SSR 96-7p (authorizing adverse inference if frequency of treatment is inconsistent with the level of complaints). To the extent that the ALJ may have erred by failing to afford plaintiff an opportunity to address the infrequency of his treatment, *see* SSR 96-7p, plaintiff has failed to show any resulting prejudice, where there is no indication in the existing record of any fiscal, mental, religious, or other barrier to treatment. *Compare Alexander, supra*.[5]

---

[4] The court further observes that plaintiff's own testimony was inconsistent, at times. At the hearing, Pratt stated (without adding any qualifiers), that he probably could lift 15 pounds, without a problem. (Tr. 26). At the consultative examination, plaintiff reported that he could not lift anything at all, and could stand but for five to ten minutes. (Tr. 128). Nonetheless, Dr. Cantwell opined that Pratt could stand and/or walk for full workday, and lift up to 20 pounds, when not experiencing an acute attack. (Tr. 130).

[5] In *Alexander*, the undersigned noted potential justifications for plaintiff's apparent non-compliance in the existing record. *Alexander, supra*. Moreover, the Fifth Circuit has emphasized that it will "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (citation omitted). Here, not only has plaintiff failed to adduce evidence that might have altered the result, *see Brock, supra*, the ALJ's credibility determination is supported by substantial evidence, even without consideration of the infrequency of medical treatment. *See* discussion, *supra*; *compare Alexander, supra*.

Plaintiff further argues that the ALJ erred in his residual functional capacity assessment because he failed to recognize that in a December 2006, functional capacity evaluation, physical therapist, Steve Allison, included a restriction recognizing Pratt's need for periodic ten to fifteen minute allowances each hour to switch positions. (Tr. 12). However, in plaintiff's prior application for benefits, that also included the same December 2006 functional capacity evaluation at issue here, the vocational expert opined that even with 10-15 minute allowances to change positions, there were light jobs that plaintiff could perform that existed in substantial numbers in the national economy. *See* Comm.'r's Brief [doc. # 17], pgs. 9-10 in Civil Action No. 07-2042.[6]

Furthermore, the ALJ specifically credited the findings of the medical doctor, Cantwell. Physical therapists, like chiropractors, are not "acceptable medical sources" under the regulations. 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, only "acceptable medical sources" can provide "medical opinions" to show the severity of a claimant's impairment and how it affects her functional ability. 20 C.F.R. § 1527(a)(2) & 416.927(a)(2). Although the ALJ is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion, "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, . . . 'acceptable medical sources' 'are the

---

[6] Plaintiff argues that the vocational expert in this case opined that if he needed periodic allowances to change his position, then there were no jobs in the national economy that he could perform. However, that is not the hypothetical that counsel posed to the vocational expert. Rather, counsel's hypothetical envisioned a more restrictive limitation that included the need to "walk away" from the workstation. (Tr. 35). In contrast, the limitation imposed by the physical therapist only recognized plaintiff's need to periodically change positions between standing, walking, and sitting. *See* Tr. 142.

most qualified health care professionals.'" SSR 06-03p.[7]

Of course, that is precisely what the ALJ did in this case. He implicitly gave greatest weight to the medical opinion of the most qualified health care professional, Dr. Cantwell, whose findings, in turn, provide substantial evidence for the ALJ's residual functional capacity assessment. Thus, even if the instant ALJ incorrectly summarized the findings of the 2006 functional capacity evaluation, any error was harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

## III. <u>Steps Four and Five</u>

The ALJ concluded at Step Four of the sequential evaluation process that Pratt could not perform his past relevant work. (Tr. 15). Accordingly, he proceeded to Step Five. At this step, the ALJ determined that plaintiff was a younger individual, with at least a high school education, and that transferability of skills was immaterial. (Tr. 15). The ALJ observed that given Pratt's vocational factors, and with a residual functional capacity for the full range of light work, the Medical-Vocational Guidelines direct a finding of not disabled. 20 C.F.R. § 404.1569; Rule 202.21 & 202.22, Table 1, Appendix 2, Subpart P, Regulations No. 4. The ALJ's Step Five

---

[7] *See also, Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recognizing that the regulations accord less weight to other sources such as chiropractors than to medical doctors).
 In another recent decision, plaintiff sought reversal, in part, because of a functional capacity evaluation completed by physical therapist, Steve Allison, wherein he found that the claimant needed to take a 20 minute break from sitting each hour. *White v. Astrue*, 2009 WL 278898 (W.D. La. Feb. 5, 2009). In rejecting plaintiff's basis for reversal, Magistrate Judge Hornsby observed that "[t]he ALJ found the medical source reports persuasive, and the presence of the therapist's report is not enough to deprive the agency decision from being based on credible evidentiary choices." *Id*.

determination was further supported by vocational expert testimony. (Tr. 15, 33-34).

## Conclusion

The ALJ in this case was tasked with determining whether plaintiff was disabled. In so doing, he considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was not uniform and could have supported a different outcome. However, the ALJ ultimately grounded his decision upon the opinion of the consultative physician. Such conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton, supra*.[8] That is not to say that the ALJ's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Pratt was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be

---

[8] Admittedly, this court has expanded upon some of the reasoning given by the Commissioner for his decision. Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here. Further, the Fifth Circuit implicitly has sanctioned the federal courts' practice of assigning independent reasons for discounting newly adduced evidence. *See e.g., Foster, supra; Garth v. Astrue*, 393 Fed. Appx. 196 (5th Cir. Aug. 26, 2010) (unpubl.).

**AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 4th day of August 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE